IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02779-RM

EXTRACTION OIL & GAS, INC.

     Plaintiff(s),

v.

THE CITY AND COUNTY OF BROOMFIELD;

     Defendant(s).

---

**MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6)**

---

## I.      INTRODUCTION[1]

This lawsuit is Extraction Oil & Gas, Inc.'s ("Extraction") attempt to relitigate issues already addressed in its state municipal court prosecution for operating oil and gas wells despite failing to submit a noise study as the City and County of Broomfield's (the "City") Emergency Ordinance No. 2117 (the "Ordinance") requires.  Extraction advances claims for violations of the Contracts, Ex Post Facto, Fourteenth Amendment Equal Protection Clauses of the U.S. Constitution (Fifth Claim for Relief), various state contract claims (Second, Third, and Fourth Claims for Relief) and state and federal claims for injunctive and declaratory relief (First and Sixth Claims for Relief).  These have already been raised, rejected, and preserved for appeal in the state court municipal prosecutions and the *Younger* abstention doctrine precludes this Court

---

[1] **Certificate of Conferral**: The undersigned initiated the conferral process on October 28, 2020. Extraction's counsel indicated in a phone call on October 29, 2020 that she could not reach her client and, therefore, Extraction's position on this motion is unknown.

from interfering until the prosecutions, including any appeal(s), conclude.[2]  Extraction's effort to invalidate its conviction (and any potential future adverse findings during the upcoming December trial) through the constitutional arguments in its Fifth Claim for Relief also flaunt the *Heck* doctrine and are based on nothing more than the types of naked conclusory allegations that are insufficient to state a plausible claim for relief.  Furthermore, Extraction's regulatory taking claim, as outlined in its Seventh Claim for Relief, does not allege a cognizable taking, nor is the speculative future taking alluded to therein ripe for review.  Once the Complaint (#1) is stripped of the federal claims for relief, there is no reason for this Court to exercise supplemental jurisdiction over the remaining state causes of action.

## II.      STANDARD OF REVIEW

### A.      Rule 12(b)(1).

Federal courts are courts of limited jurisdiction.  *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Courts may consider affidavits or other documents to resolve jurisdictional facts.  *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015); *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  It is Extraction's burden to establish jurisdiction here.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

### B.      Rule 12(b)(6).

A complaint must contain enough allegations of fact, taken as true, "to state a claim for relief that is plausible on its face" to survive a Rule 12(b)(6) challenge.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Following a trial to the Court on October 7, 2020, Extraction was convicted in Case Nos. 20M800107, 20M800108, 20M800109, 20M800120, 20M800153, 20M800169, and 20M800189 (collectively the "BMC 9-36-080 Citations").  The municipal court continued the remaining trial, which focuses on nuisance-like levels of noise, from October 27, 2020 to December 7, 2020.

and 79 (2009) ("*Iqbal*").  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).  A well-pled claim must demonstrate more than a sheer possibility that a defendant acted unlawfully—it is not enough to plead facts that are "merely consistent with" a defendant's liability. *Iqbal,* 556 U.S. at 677 (quotation omitted).  This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that  the pleader is entitled to relief. *Id.* at 679.

## III.     ARGUMENT

**A.     *Younger* abstention is mandatory under the present circumstances.**

### 1.     The *Younger* doctrine.

*Younger* abstention is a jurisdictional attack addressed under Rule 12(b)(1) and requires federal courts to refuse to hear a case that properly falls within its jurisdiction.[3]  *D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004) ("*D.L.*").  Federal court abstention in the wake of a pending state criminal prosecution, as is the case here, "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted."  *Younger v. Harris*, 401 U.S. 37, 44 (1971).  Restraining federal courts from interfering with state criminal prosecutions preserves the notion of comity and the fundamental principles of federalism that acknowledge the need to restrain from interfering in the States' freedom and ability to "perform their separate

---

[3] Staying proceedings until the state prosecution is final is an appropriate alternative to dismissing Extraction's claims.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

functions in the separate ways." *Id.* The classic example of this proposition is a federal action meant to enjoin a state criminal proceeding or seek declaratory relief such that an injunction of the criminal prosecution would necessarily follow. *Id.* The *Younger* doctrine extends to any federal claim for monetary relief when a judgment would have a preclusive effect on the pending state prosecution. *D.L.*, 392 F.3d at 1228.

*Younger* abstention is mandatory when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009) (quotations omitted). All of the prerequisites for Younger abstention are present here.

## 2. *Younger* abstention applies to Extraction's § 1983 claims, claims for breach of contract, and declaratory and injunctive relief.

The present circumstances mandate abstention here. First, there is no question that there is a contemporaneous criminal prosecution in the Broomfield municipal court. While one trial has occurred, Extraction intends to appeal its convictions. A second trial on unlawful noise levels is scheduled for December 7-10, 2020.

Second, there can be no dispute that the state municipal court provides an adequate forum to hear the claims Extraction now raises in the Complaint. "[U]nless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court." *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (quotations omitted). This is plainly not the case here given that Extraction asserted the existence of several perceived constitutional defects which, it argued, necessitated dismissal of the municipal court prosecution, including that the Ordinance impermissibly targets Extraction in violation of equal protection principles and impairs alleged vested property and

contract rights.  *See* #1, ¶ 99 (outlining constitutional attacks); #1-8, pp 17-36 (legal argument on constitutional issues submitted to the municipal court); #1-9, pp 12-16 (same).  Extraction then reasserted these same arguments, along with other critiques about how the municipal court prosecution offends the state and federal constitutions in its wide-ranging Motion for Judgment of Acquittal in the October 6, 2020 Noise Ordinance (BMC 9-36-080) Trial ("Motion for Acquittal").  *See* Exhibit A, pp 42-43 (summarizing constitutional arguments).

Moreover, the Colorado state courts provide Extraction with an adequate forum to litigate its constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies.  *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of ... jurisdiction if the issues raised ... may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted).  *See also Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts are obligated to "to guard, enforce, and protect every right granted or secured by the constitution of the United States....") (internal quotation omitted).  Extraction may appeal the municipal court's decision on the constitutional issues it raised (along with any other perceived defects in the prosecution) to the Broomfield County District Court.  *See* C.M.C.R. 237(b) (appeals from municipal court proceed in accordance with Colo. Crim. P. R. 37); *see also* Crim. P. 37.  In fact, Extraction has already indicated in the municipal proceedings that it intends to appeal its October 7, 2020 convictions.  #13, p 2.  And there is no doubt that Extraction, through its Motion to Dismiss and Motion for Acquittal, has preserved numerous constitutional and non-constitutional arguments for appellate review.  Thus, a finding in this federal litigation of some constitutional defect may contradict the municipal court's ruling, a state appellate decision, and/or it may also have preclusive effect in the ongoing state court proceedings.

Finally, the third *Younger* element is clearly met.   State criminal proceedings are "a traditional area of state concern."   *Winn*, 945 F.3d at 1258 (quoting *Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989)); *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (injunction against state criminal-enforcement activities "seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger*");   *Elliott v. Brown*, No. 20-CV-00964-RBJ, 2020 WL 2112363, at *9 (D. Colo. May 4, 2020) (quoting *People v. Allee,* 740 P.2d 1, 9 (Colo. 1987) ("Colorado has an 'important state interest' in the enforcement of its criminal laws.").

Given that all three *Younger* abstention requirements are satisfied here, the Court must abstain from exercising jurisdiction in this case until the conclusion of the municipal court prosecutions, including any appeal(s) Extraction may pursue. [4]

## B.   The *Heck* doctrine bars Extraction's claims for damages under § 1983.

If this Court looks past *Younger* abstention, Extraction's contention that its prosecution by the City under the Ordinance violates the Contracts and Ex Post Facto Clauses, U.S. Const. art. I, § 10, and principals of Fourteenth Amendment equal protection (#1, ¶¶ 140- 145) would be a collateral attack on and undermine any finding or conviction in the municipal court and is, therefore, subject to dismissal under Rule 12(b)(6) for failure to state a plausible claim for relief. *Mendia v. City of Wellington*, 432 F. App'x 796, 798 n.1 (10th Cir. 2011) (unreported). On October 7, 2020, the municipal court, following a trial, found Extraction violated the Ordinance in the BMC 9-36-080 Citations. *See* Exhibit B. Implicit in Extraction's § 1983 claim, now, is an

---

[4] Extraction bears a "heavy burden" to *prove*, not merely allege, the sort of extraordinary circumstances that would justify this Court's interference with the state municipal court prosecution. *Phelps*, 59 F.3d at 1066. The recognized exceptions to *Younger* abstention provide for a "very narrow gate for federal intervention." *Id.* at 1064 (quotation omitted).   The City will not speculate about what, if any, exception Extraction may seek to apply and will address Extraction's argument on this issue in its reply brief, if necessary.

effort to invalidate these convictions on constitutional grounds. *See* #1, ¶ 99; *see also* #13, p 2 ("As of this writing, Broomfield is prosecuting Extraction for seven municipal code citations under this special, targeted ordinance in Broomfield Municipal Court. These matters will be appealed by a different court on different bases.").

A claim for damages under § 1983 is not cognizable if a favorable decision would necessarily imply the invalidity of the criminal conviction or sentence. *Heck v. Humphrey*. 512 U.S. 477, 486-87 (1994). To circumvent this bar on what is a collateral attack and *de facto* appeal of the municipal court prosecution, Extraction must show that the underlying state prosecution concluded in its favor because the conviction was (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such a determination; or (4) called into question by a federal court's issuance of a writ of habeas corpus. *Id*. at 487. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."  *Id*. (emphasis in original).

By Extraction's own admission, the initial prosecution did not result in its favor.  #13, p 2.  Extraction has not pled any facts that meet any of the four above exceptions which would permit its theories for recovery under § 1983 to move forward. Extraction is only now just contemplating an appeal of the conviction. *Id*. Given that Extraction challenges the foundation of the municipal court prosecution by claiming that the Constitution's Contracts and Ex Post Facto clauses shield it from the Ordinance's requirements and prosecution thereunder and that such regulation violates equal protection (and asserted these arguments, among others, as defenses in the municipal court prosecution and in its Motion for Acquittal), a finding in Extraction's favor by this Court would undoubtedly call into question the validity of the present convictions and the prior judicial rejection of Extraction's equal protection, impairment of contract, and *ex post facto*

defenses asserted in municipal court.  Extraction did not achieve a favorable termination of its conviction under the Ordinance, so *Heck* bars its § 1983 theories of relief.

**C.    Extraction's claims under the Fifth Amendment and § 1983 are not viable.** [5]

**1.    Fifth Amendment regulatory taking claim.**

Extraction's Seventh Claim for Relief purports to assert a claim for condemnation for which the City owes it compensation.  Close review of Extraction's allegations, however, reveals that Extraction is presently operating all of its drilled wells but that it is worried the City will shut down or impact its operations at some point in the future.  It believes the City's adoption of the Ordinance may require it to operate those wells in a less profitable manner than it would otherwise like.  Extraction further asserts that the Ordinance's impact will negatively impact its future operation of its sites such that a regulatory taking will have occurred.  *See* #1, ¶¶ 110, 112 and 151-53.  As shown below, these takings theories are unripe for lack of a "final decision" and fail to state a "taking" under the Fifth Amendment. Finally, and most fundamentally, Extraction's request for prospective relief under the Fifth Amendment fails because the Fifth Amendment does not provide an avenue for relief for an anticipatory taking.  *See Ogden River Water Users' Ass'n v. Weber Basin W. Cons.*, 238 F.2d 936, 942 (10th Cir. 1956) (the "Fifth Amendment [does not] entitle one to anticipatory compensation.") ("*Ogden*").

**a.    The "taking" claim is unripe.**

To the extent Extraction contends that the City's adoption  of the Ordinance has resulted in a taking, or that its impact may impair and/or require Extraction to cease operations in the future, #1, ¶¶ 150-52, such claim is not "final" and is not ripe for review by this Court. The

---

[5] If the Court agrees that abstention under *Younger* is mandatory, it need not decide the City's Rule 12(b)(6) challenge to Extraction's Fifth Claim for Relief.  *See D.L.,* 392 F.3d at 1232 (*Younger* abstention deprives district court of jurisdiction to resolve claims).

question of a claim's ripeness is a challenge to the Court's subject matter jurisdiction. *SK Finance SA v. Bd of Cty. Com'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997).

A regulatory taking claim is not ripe "until the government entity charged with implementing [zoning] regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87(1985) ("*Williamson*").[6] This finality requirement "seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review." *Bateman v. City of West Bountiful*, 89 F.3d 704, 708 (10th Cir. 1996). "A 'final decision' requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question." *SK Finance*, 126 F.3d at 1276.

The Ordinance permits Extraction to seek a variance. *See* #1-5, pp 5-6 (Ordinance's variance provision). Indeed, Extraction has done so, though its application lacked sufficient information to support its request such that the City has asked Extraction to supply it with additional documentation. *See* Exhibit C, p 3. Unless and until the City actually denies Extraction's variance application, the City has yet to reach a final decision that would make this takings theory ripe for adjudication. Several Tenth Circuit decisions are instructive.

In *Bateman v. City of West Bountiful*, 89 F.3d 704 (10th Cir. 1996) the Tenth Circuit affirmed the dismissal of the plaintiff's Takings Clause claim for ripeness on the basis that the

---

[6] In *Knick,* the Supreme Court overruled the *Williamson* "state-litigation requirement," which required a property owner to bring a claim for just compensation under state law in state court before bringing a taking claim in federal court. However, the remainder of *Williamson* remains good law. *Knick*, 139 S. Ct. at 2169 (noting that "the validity of [the] finality requirement ... is not at issue"). Critically, this District has interpreted *Knick* as not overruling the requirement that a property owner must obtain a final decision before bringing a § 1983 takings claim in federal court. *N. Mill St., LLC v. City of Aspen*, No. 19-CV-00188-PAB-GPG, 2020 WL 1166855, at *2 (D. Colo. Mar. 10, 2020) (applying *Williamson's* finality requirement).

plaintiff "fail[ed] to seek review of the City's action under the procedures authorized by state law." *Id*. at 706. Specifically, the plaintiff could have sought a variance to bring his property into compliance with a city building ordinance but chose instead to file a lawsuit. *Id*. at 705-06. Although the city determined the plaintiff's current use did not comply with the city's noise ordinance, that determination was not "conclusive" because it left open the possibility that plaintiff could "obtain[] a variance from the board of adjustment." *Id*. at 708 (citing *Williamson*, 473 U.S. at 194). Because there was not "a conclusive determination of the property's status," plaintiff failed to show that a final decision had been reached. *Id*. at 707.

Similarly, in *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989), *abrogated in part by Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999) ("*Landmark Land*") the Tenth Circuit concluded the plaintiff's takings claim was unripe because the city had "neither indicated definitively what level of development will be allowed on [plaintiff's] property, nor finally and officially ruled out the possibility that [the plaintiff] will be able to proceed with its original plans." *Id*. at 721. The Tenth Circuit noted that the claim would not be ripe until the plaintiff was "in a position to allege not only that its initial permit applications were denied, but also that it has made some effort to pursue compromise … that would allow some level of development." *Id*.

Here, like in *Bateman* and *Landmark Land*, Extraction fails to establish that a final decision has been reached that would make its takings theory ripe. The City has asked for additional information from Extraction to support its variance application and, therefore, this theory has not ripened to the point where there has been "a conclusive determination of the property's status." *Bateman*, 89 F.3d at 707. Similarly absent from the Complaint is any allegation that Extraction fully exhausted the variance process as *Landmark Land* requires. Thus,

"the issues and factual components of the dispute" over the future impact of the Ordinance on Extraction's other sites are not "sufficiently fleshed out to permit meaningful judicial review" which is the singular purpose of the finality requirement. *Bateman*, 89 F.3d at 707. Thus, to the extent Extraction's taking claim under the Fifth Amendment rests on some prospective effect of the Ordinance, the Court must dismiss it on ripeness grounds.

### b.   Extraction's has not stated a cognizable taking theory.

Alternatively, Extraction has not stated a taking. Extraction alleges the City's adoption of the Ordinance was an impermissible use of its police powers, one that has since resulted in a regulatory taking under the Fifth Amendment. *See* #1, ¶¶ 150-54. The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without paying for it. U.S. Const. amend. V; *see Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). A taking claim is evaluated in two parts. First, Extraction must state a cognizable property interest that is the subject of the taking. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000 (1984). It is an unsettled question whether a mineral interest alone is a sufficient property interest. *See Animas Valley Sand & Gravel, Inc. v. Bd. of Cty. Comm'rs of Cty. of La Plata*, 38 P.3d 59, 68 (Colo. 2001). Nonetheless, the City does not challenge that Extraction meets this threshold requirement having alleged that it owns the mineral rights to the various sites, including the site that is the subject of the noise ordinance violations. *See* #1, ¶ 9.

Second, Extraction must show that the deprivation or reduction of that interest constitutes a "taking." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). Takings Clause does not require compensation unless private property has been taken for "public use." U.S. Const. amend. V. It is well-established that there is no taking for "public use" where the government acts pursuant to its police power. *See Keystone Bituminous Coal Ass'n v.*

*DeBenedictis*, 480 U.S. 470, 491–92 (1987) ("[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (internal citations omitted); *Goldblatt v. Town of Hempstead, N. Y.*, 369 U.S. 590, 592 (1962) ("If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."); *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019), *cert. denied*, No. 19-1123, 2020 WL 3492667 (U.S. June 29, 2020) (unpublished) (when the state acts to preserve the "safety of the public," the state "is not, and, consistent[ ] with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate [affected property owners] for pecuniary losses they may sustain" in the process) (quoting *Mugler v. Kansas*, 123 U.S. 623, 669 (1887)).

The City's adoption of the Ordinance was a valid exercise of its police power and, therefore, is not a taking. Through the Ordinance, the City requires all businesses engaged in "any industrial use," between 10:00 p.m. and 7:00 a.m., that is unenclosed, and located outside of industrial zoned districts to "show that the noise from the operations will not exceed 40 dB(A) or 65 dB(C)" under certain parameters. #1-5, p 4. Colorado courts recognize that municipalities have broad police powers, including the power to establish laws that promote the health, safety, and welfare of citizens. *Town of Dillon v. Yacht Club Condominiums Home Owners Ass'n*, 325 P.3d 1032, 1038 (Colo. 2014). Indeed, in enacting the Ordinance, the City found that there had been noise complaints concerning oil and gas operations, "including complaints of adverse health impacts caused by such noise." #1-5, p 1. It further found that noise can "cause or exacerbate" significant health concerns. *Id*. As a result, and pursuant to renewed authority

permitted to local governments to regulate oil and gas development under C.R.S. § 29-20-104(1)(h), the City enacted the Ordinance. *Id*.

Extraction also fails to plead facts that plausibly suggest the Ordinance strips it of all "economically productive or beneficial uses" of its sites. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992). The Supreme Court has expressly cabined this categorical rule to "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002) (emphasis in original).

Extraction fails to plausibly allege that the Ordinance takes away *all* economically beneficial uses of its mineral interests. The Complaint is silent as to the present impact of the Ordinance on Extraction's operations. Instead, Extraction nakedly alleges that to comply with the Ordinance moving forward, it would have to shut down for "nine hours every night," rendering its operations "not economically feasible." #1, ¶ 112. As mentioned previously, the Fifth Amendment does not contemplate a claim that anticipates speculative, future impact. *Ogden*, 238 F.2d at 942. Moreover, loss of profits, alone, is "a slender reed upon which to rest a takings claim." *Andrus v. Allard*, 444 U.S. 51, 66 (1979). And the destruction of "one 'strand' of the bundle [of property rights] is not a taking." *Id*. at 66.

Though the Ordinance's requirements may cause delay in certain phases, a point which remains an open question given that Extraction has not offered the City any evidence in support of this contention yet, Extraction concedes that it is now "quietly" producing oil and gas at two of its six sites. *Id*. at ¶ 110. It is illogical, then, to deduce from Extraction's sparse factual allegations that it has been deprived of all economically beneficial or productive use of the property or that its property has been rendered effectively worthless as a result of the Ordinance.

Other than baldly contending that it is impossible for any oil and gas operation to comply with the Ordinance's noise requirements, #1, ¶ 85, Extraction offers no facts to explain why this deprives it of all benefit it derives from these sites. Moreover, Extraction's unsupported contention that the City is attempting to "shut down" its operations (#1, ¶ 151) is the type of speculative and conclusory allegation that this Court must disregard. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]") (internal quotations omitted). Extraction has not adequately stated a claim that a taking occurred as a result of being cited for violating the Ordinance and the Court must dismiss Extraction's Fifth Amendment claim.

### 2. Extraction's § 1983 claims.

#### a. Contracts Clause claim.

Extraction claims the City's enforcement of the Ordinance violates the Contracts Clause. #1, ¶ 141. The United States Constitution states that "[n]o State shall...pass any...Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Nonetheless, not all laws affecting pre-existing contracts violate the Contracts Clause. *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). Courts apply a two-part test to determine whether a law crosses this constitutional line.  The threshold inquiry is whether the law has "operated as a substantial impairment of a contractual relationship." *Id*. (citation omitted). In answering that question, "the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id*. (citations omitted). If a substantial impairment exists, the inquiry turns to the "means and ends of the legislation." *Id*. In particular, the Court has asked whether the state law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose." *Id*.

(quotation omitted). More simply put, the Contracts Clause does not "obliterate" the police power. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) ("It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.").

With this framework in mind, Extraction cannot make the requisite threshold showing here. The Amended and Restated Oil and Gas Operator Agreement ("Operator Agreement") explicitly provided  that Extraction could be subject to "regulations that are general in nature and that are appliable to all commercial and industrial operations in the City" even though such regulations might be more stringent than those regulations that applied at the time of the agreement.  #1-2, p 8. In negotiating the Operator Agreement, Extraction conceded the City's ability to regulate its conduct in the future. Although Extraction may have agreed to terms of the Operator Agreement that it now regrets, Extraction cannot circumvent those terms now by claiming that a substantial impairment exists.

Nor can Extraction's claim survive even if the Court looks to the appropriateness, reasonableness, or public purpose of the Ordinance. The Ordinance is a lawful exercise of the City police powers, *see, supra*, § III(C)(1)(a), and, therefore, Extraction cannot maintain its Contract Clause claim here.

### b.      Ex Post Facto Clause claim.

Extraction's theory that the City's prosecution under the Ordinance was impermissible under the *ex post facto* ban in Article 1, § 10 of the United States Constitution also fails as a matter of law.  #1, ¶ 143.   The *ex post facto* prohibition precludes enactment of a law that

"imposes a punishment for an act [that] was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quotations and citations omitted). It has long been recognized that an owner of property holds it subject to ordinances enacted under police powers. *See, e.g., Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (stating that zoning laws must be upheld as valid exercises of police power unless "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare").

Here, the City enacted the Ordinance on January 14, 2020.  #1-5, p 5.  Nonetheless, all of the citations the City issued Extraction, which are collectively attached to the Complaint as Exhibit 6 (#1-6), #1, ¶ 93,[7] are from noise violations that occurred in February and March 2020. Extraction does not contend that it was operating its sites at permissible noise levels on the dates noted in the citations.  Thus, Extraction has not pled facts implicating the *ex post* facto clause.

**c.**      **Fourteenth Amendment class-of-one equal protection claim.**

**i.**      **Extraction cannot maintain an as-applied class-of-one claim.**

Extraction appears to base its class-of-one claim, in-part, on the contention that it has been impermissibly prosecuted for noise ordinance violations.  #1, § ¶¶ 91 and 94.  The Supreme Court, in *Enquist v. Oregon v. Department of Agriculture*, 553 U.S. 591 (2008), rejected the application of class-of-one equal protection to state actions that involve this type of discretionary decision-making.  *Enquist* pointed to police officers issuing traffic citations for speeding to illustrate the point.  A police officer who tickets one driver for speeding and not others, based on nothing more than speed, makes a "subjective, individualized" decision.  The driver's

---

[7] Given Extraction's submission of its citations as an exhibit to the Complaint, among numerous other documents, such exhibits may be considered by the Court without converting this motion to a motion for summary judgment under Rule 56.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)

complaining about being singled out for no reason other than speeding, as opposed to being ticketed because of the driver's race or sex, is nothing more than a challenge to the legitimacy of the underlying action, not "the fear of improper government classification." Id. at 604. Under such circumstances, where discretion is inherent in the challenged action, it is improper to contend that the "subjective, individualized decision … was subjective and individualized" such that a class-of-one claim cannot lie. *Id*. at 604-05.

Here, the Ordinance imposes a noise limits on specific businesses just as a speed limit restricts drivers. The City cited Extraction for noise violations because the subject "industrial use"[8] did not meet the Ordinance's noise level requirements. Extraction's contention that it was "singled out" for prosecution under the Ordinance, like the example offered by the *Enquist* Court, is nothing more than a challenge to the legitimacy of the underlying discretionary decision to prosecute and one that does not raise traditional equal protection concerns.

### ii.   Extraction has not stated a facial class-of-one challenge to the Ordinance.

Lastly, Extraction's facial challenge to the Ordinance on class-of-one grounds does not pass muster under *Twombly* and *Iqbal*. *See* #1, ¶ 142. Extraction must plead that (1) others "'similarly situated in all material respects' were treated differently" and (2) that there is "no objectively reasonable basis for the defendant's action." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) ("*Kansas Penn*"). To guard against "turning even quotidian exercises of government discretion into constitutional causes," *Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1209 (10th Cir. 2006) ("*Jicarilla*"), the Tenth Circuit has recognized that class-of-one plaintiffs bear a "substantial burden" in satisfying both elements of

---

[8] An "industrial use," under the Ordinance, must be permitted as a "use by special review in an I-2 or I-3 zone district," and includes uses such as "the development or operation of oil wells or gas wells," among others. #1-5, p 3.

a class-of-one claim. *Kansas Penn*, 656 F.3d at 1217; *Jicarilla,* 440 F.3d at 1212 ("The requirement that a plaintiff show that similarly situated persons were treated differently 'is especially important in class-of-one cases'"); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004) ("It is … imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class").

The Tenth Circuit emphasizes a strict reading of these elements.  "It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation." *Jennings*, 383 F.3d at 1210-11.  Requiring that a plaintiff identify comparators that are "similarly situated in all material respects" is "inevitably more demanding where a difference in treatment could be legitimately based on a number of different factors." *Kansas Penn*, 656 F.3d at 1218. A broader application "could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Id*.  (quotation omitted). In order to "nudge" claims "across the line from conceivable to plausible," *Twombly,* 550 U.S. at 557, a class-of-one plaintiff must allege "*specific examples* of similarly situated individuals and differing treatment." *Kansas Penn*, 656 F.3d at 1219 (citation omitted) (emphasis added).

The allegations in Extraction's Complaint are nothing more than the type of non-specific conclusory allegations that  fail to state a plausible class-of-one claim. *See id.* at 1220 (finding the allegation that "numerous parcels of land in Cherokee County exist in conditions similar to the Subject Property or exhibit conditions similar to and in many cases much worse than those alleged by the [CCHD] to exist on the property" to be a "formulaic recitation" of a legal conclusion that did not satisfy *Twombly* and *Iqbal*). Extraction, however, has not identified in the

Complaint any (1) "industrial use;" (2) located outside of an industrial zone district; (3) that is conducting "operations outside of a fully enclosed structure … between the hours of 10:00 p.m. and 7 a.m.;" (4) without it having submitted a noise modeling study demonstrating that "noise from the operations will not exceed 40 db(A) or 65 db(C)." #1-5, p 5.

"[A]fter *Twombly* and *Iqbal*, it is insufficient to allege that, other, unidentified properties have 'comparable' or 'similar' conditions – the claim must be supported by specific facts suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Kansas Penn*, 656, F.3d at 1220. Extraction's allegation that the City has not applied the Ordinance to "any commercial operations" and that "no other industrial operation has submitted a noise study to comply with the Ordinance …," #1, ¶¶ 88 and 89, is the type of naked assertions that *Iqbal* requires this Court to disregard and falls below *Kansas Penn's* rigorous requirements for stating a plausible class-of-one claim.

Extraction fares no better on the second element of its claim in which it is required to establish the difference in treatment was without rational basis.  The Ordinance applies to a wide scope of industrial uses and Extraction fails to discuss how or why the boundaries of the newly enacted ordinance are irrational.  This is especially important given that Ordinance was designed to apply similar noise restrictions that exist for uses in an industrial zone.  #1-Absent from the complaint is the mention of any number of other businesses meeting the definition of an "Industrial Use" that were not cited under the Ordinance.  *See* #1-5, p 4.  These are the types of factual averments necessary to plausibly state that the "enforcement action was arbitrary or for an improper motive." *Kansas Penn*, 656 F.3d at 1218.  The Complaint, however, is bereft of any such well-pled facts and, as a result, the Court should dismiss this claim.

**D.      The Court should not exercise supplemental jurisdiction over state law claims.**

Finally, the Court should not exercise supplemental jurisdiction over Extraction's remaining state law claims. *See* #1, ¶¶ 113-38 and 146-54.  Extraction acknowledges this Court's jurisdiction over its state law claims is governed by 28 U.S.C. § 1367, which permits a federal district court to exercise its discretion and decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction…."  Federal district courts should "decline to exercise pendent jurisdiction … absent compelling reasons to the contrary" if "federal claims are dismissed before trial, leaving only issues of state law."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted).  Given the various impediments to the Court's exercising jurisdiction over the federal claims in this case, Extraction's state law claim should be dismissed as well.

WHEREFORE, the City respectfully requests this Court dismiss (or stay) Extraction's federal claims, decline to exercise supplemental jurisdiction over its state law claims, and grant any other appropriate relief.

Respectfully submitted this 29th day of October, 2020.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*

_____

Josh A. Marks
Heidi C. Potter
David J. Goldfarb
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com
           hcp@bhgrlaw.com
           djg@bhgrlaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of October, 2020, I electronically filed the foregoing **MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6)** the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Ghislaine G. Torres Bruner
Polsinelli PC
1401 Lawrence Street
Suite 2300
Denver, CO  80202

*s/ Cheryl Stasiak*

_____
Cheryl Stasiak