IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02779-RM-NYW

EXTRACTION OIL & GAS, INC.

      Plaintiff(s),

v.

THE CITY AND COUNTY OF BROOMFIELD;

      Defendant(s).

---

## RENEWED MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6)

---

## I.      INTRODUCTION[1]

Extraction Oil & Gas, Inc.'s ("Extraction") claims arise out of the backdrop of a successful state municipal court prosecution for violations of the City and County of Broomfield's (the "City") newly enacted obligation to conduct a noise study in accordance with Ordinance No. 2117 (the "Ordinance")[2] and a pending prosecution for exceeding reasonable noise levels. Extraction's First Amended Complaint ("FAC") (#29) repleads the same basic claims as its Complaint (#1) – a vested rights theory (First Claim for Relief), state law breach of contract claims (Second, Third, and Fourth Claims for Relief), § 1983 theories of relief relating to the Contracts and Ex Post Facto Clauses of the U.S. Constitution and Fourteenth Amendment class-of-one equal protection (Fifth Claim for Relief), and a regulatory takings claim under the Fifth Amendment and Colorado

---

[1] **Certificate of Conferral:** On November 24, 2020, counsel for both parties conferred by phone regarding the relief requested herein. Extraction objects to the dismissal of its claims on any of the grounds outlined in this motion.

[2] Following a trial to the Court on October 7, 2020, Extraction was convicted in Case Nos. 20M800107, 20M800108, 20M800109, 20M800120, 20M800153, 20M800169, and 20M800189 (collectively, the "BMC 9-36-080 Citations").

Constitution (Sixth Claim for Relief). Extraction's claims, given their present posture, invite federal court *Younger* abstention, ripeness, and *Heck* doctrine defenses. Even if Extraction can overcome these hurdles, their federal claims are deficient as a matter of law. Once the Court strips the FAC of the federal claims for relief, there is no reason for it to exercise supplemental jurisdiction over the remaining state causes of action.

## II.      STANDARD OF REVIEW

In the interest of efficiency, the City incorporates its discussion from the Motion to Dismiss ("MTD") (#19) of the standards of review applicable to motions challenging the Court's subject matter jurisdiction under Rule 12(b)(1) as well as for failure to state claim for relief under Rule 12(b)(6) and the pleading standards identified in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"). *See* #19, pp 2-3. Extraction's vested rights, § 1983, and regulatory taking claims are all subject to dismissal under Rule 12(b)(1) based on abstention and ripeness principles. *See* #19, pp 3, 8, and 9. Extraction's § 1983 and regulatory taking claims are also subject to dismissal under Rule 12(b)(6) due to various pleading deficiencies. *See id.* at pp 6-8 and 11-19.

## III.      ARGUMENT

### A.      *Younger* abstention is mandatory.

#### 1.      The *Younger* doctrine.

Federal court abstention in the wake of a pending state criminal prosecution, as is the case here, "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Younger v. Harris*, 401 U.S. 37, 44 (1971). The classic example of this is a federal action meant to enjoin a state criminal proceeding or seek declaratory relief such that an injunction of the criminal prosecution would necessarily follow. *Id.* *Younger* abstention extends to any federal claim for

monetary relief when a judgment would have a preclusive effect on a pending state prosecution. *D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("*D.L.*").

*Younger* abstention is mandatory when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009) (quotations omitted).[3]

### 2. *Younger* abstention applies to Extraction's § 1983 claims, claims for breach of contract, and declaratory and injunctive relief.

All of the prerequisites for *Younger* abstention are present here.  First, contemporaneous criminal prosecutions are ongoing.  One municipal court trial has concluded with Extraction pursuing an appeal on all seven of the BMC 9-36-080 Citation convictions.  *See* #29, ¶¶ 137-40. A second trial on unlawful noise levels was scheduled for December 7-10, 2020, but has been continued due to COVID-19 safety concerns.  The third *Younger* factor is also satisfied here since state criminal proceedings are "a traditional area of state concern."  *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (quotation omitted); *Elliott v. Brown*, No. 20-CV-00964-RBJ, 2020 WL 2112363, at *9 (D. Colo. May 4, 2020) (quoting *People v. Allee,* 740 P.2d 1, 9 (Colo. 1987) ("Colorado has an 'important state interest' in the enforcement of its criminal laws.")).

In effort to persuade this Court to exercise subject matter jurisdiction over its federal claims, Extraction attempts to plead around the second *Younger* factor – that the "state court provides an adequate forum to hear the claims raised in the federal complaint…."  *Winn*, 945 F.3d at 1258 (quotation omitted).  Extraction avers that it will limit its state court appeal of the municipal court's denial of its motions to dismiss and for acquittal, both of which raised the same vested

---

[3] Staying proceedings until the state prosecution is final is an appropriate alternative to dismissing Extraction's claims. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

rights, equal protection class-of-one, Contracts Clause, and Ex Post Facto Clause arguments as defenses in the underlying prosecutions, *see* Exh. A, pp 20-36; Exh. B, pp 42-43, to the municipal court's interpretation of the language and applicability of the Ordinance. #29, ¶ 151. This, Extraction argues, resolves the possibility of inconsistent orders and permits this Court to exercise its jurisdiction. *Id*. at ¶¶ 149 and 151.

*Younger* abstention is only inappropriate where a federal plaintiff cannot pursue its federal contentions in an ongoing state proceeding, not where the plaintiff has pursued those contentions and elects to forgo them at some later stage of the state court prosecution. In *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, the Supreme Court concluded that the "*opportunity* to raise and have timely decided by a competent state tribunal the federal issues involved," is sufficient to justify *Younger* abstention. 457 U.S. 423 (1982) (emphasis added). *See also D.L.*, 392 F.3d at 1229 (*Younger* abstention appropriate given that "no reason appears why Plaintiffs' contentions here could not be interposed as defenses in state court.").

Here, Extraction asserted the same vested rights, equal protection, Contracts Clause, ex post facto, and breach of contract theories outlined in the FAC as defenses to the state municipal court prosecutions. *See, e.g.*, Exh. A, pp 20-36; Exh. B, pp 42-43. Extraction's preference that this Court, rather than the state appellate court, address these issues is insufficient to warrant a federal district court's interference with ongoing state court prosecutions.[4] *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of ... jurisdiction if the issues raised ... may be resolved either by trial on the merits in the state court or

---

[4] Extraction alleges that the state municipal court represented that the federal issues should be "addressed by some other court to consider." #29, ¶ 137. This ignores the municipal court's clarification at the July 28, 2020 arraignment that its order on Extraction's motion to dismiss "ruled on the legal issues" presented therein, #29-12, 12:11-12. And is further undermined by Extraction's own acknowledgement that it raised, and the municipal court, rejected these defenses before and during trial. #29, ¶ 120, 121, and 132.

by other [available] state procedures.") (quotation omitted).  Speculation about whether Extraction could have raised the federal contentions it pursues in this lawsuit is unnecessary because it specifically identified these contentions as defenses to the prosecutions.  Extraction cannot now pick and choose what issues to appeal in order to select its preferred forum.[5]

Given that all three *Younger* abstention requirements are satisfied here, the Court must abstain from exercising jurisdiction in this case until the conclusion of the municipal court prosecutions, including any appeal(s) Extraction may pursue.[6]

**B.      Extraction has not cured its *Heck* problem through the FAC.**

A § 1983 claim is not cognizable if a favorable decision would necessarily imply the invalidity of a criminal conviction or sentence.  *Heck,* 512 U.S. at 486-87.  Extraction tries to avoid *Heck* by disclaiming its interest in any damages that might stem from its § 1983 theories.  *See* #29, ¶ 154.  The form of relief sought, whether it be equitable or monetary, is irrelevant – so long as the theory of relief calls into question the validity of a criminal prosecution, *Heck* precludes the claim.  *Wilkinson v. Dobson*, 544 U.S. 74, 81-82 (2005); *see Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to claim for declaratory relief).  To circumvent this bar, Extraction must show that the underlying state prosecution concluded in its favor because the conviction was (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such a determination; or (4) called into question by a federal court's

---

[5] Extraction's federal lawsuit also implicates the well-established prohibition on seeking to invalidate a conviction in state court through the filing of a federal court action, discussed in more detail in § III(B), *infra*.  *See Heck v. Humphrey*. 512 U.S. 477, 487 (1994).  The looming *Heck* problem–now more concrete following the convictions on the BMC 9-36-080 Citations on October 7, 2020–further weighs in favor of this Court's abstaining from this matter until the criminal prosecution, to include all appeals, is final.

[6] Extraction bears a "heavy burden" to *prove*, not merely allege, the sort of extraordinary circumstances that would justify this Court's interference with the state municipal court prosecution. *Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995).  The City will not speculate about what, if any, exception Extraction may seek to apply and will address Extraction's argument on this issue in its reply brief, if necessary.

issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487.  Not only do Extraction's § 1983 theories strike at the heart of the municipal court prosecutions, but it fails to plead facts that satisfy any of the four "favorable termination" exceptions to the *Heck* doctrine.

First, Extraction's stated purpose in pursuing this lawsuit is to obtain a finding that the City's "prosecutions violated Extraction's constitutional rights under the … federal contracts clause, retrospectivity, and equal protection principles." #29, ¶ 156.  In doing so, Extraction avers that the Ordinance unlawfully targets its operations and that its terms violate federal law.  *Id.* at ¶¶ 187-89; *see also id.* at p 41, n 8.  No matter how Extraction chooses to characterize its § 1983 claims, in practice they operate as a direct challenge to the validity of the prosecutions.  *See, e.g., Roberts v. O'Bannon*, 199 F. App'x 711, 713–14 (10th Cir. 2006) (unpublished) (finding *Heck* barred equal protection claim challenging "the validity of [the plaintiff's] prosecution when another person, whom he claim[ed] to be more culpable, was not prosecuted."); *Williams v. Maroney*, 113 F. App'x 709, 711 (7th Cir. 2004) (unpublished). ("A ruling that Ms. Maroney somehow colluded with state actors to violate Mr. Williams's rights under the Ex Post Facto Clause or some other guarantee would necessarily undermine the validity of the state judgment, and so *Heck* renders Mr. Williams' allegations premature.").

Nor can Extraction show that either prosecution terminated in its favor.  Extraction was convicted on the BMC 9-36-080 Citations and only recently initiated an appeal.  #29, ¶¶ 137-41; Exh. C.[7]  The trial on the remaining two citations, as noted previously, has yet to occur.  Unless and until the present convictions are overturned and Extraction is acquitted or overturns any convictions that stem from the second trial, it has not met any of the exceptions outlined in *Heck*, and, therefore, *Heck* bars Extraction's Fifth Claim for Relief.

---

[7] Given that Extraction submitted identical notices of appeal related to each conviction, the City only incudes one such notice as an exhibit to this motion.

**C.  Extraction cannot maintain its claims for relief under § 1983 and the Fifth Amendment.**

### 1.  Fifth Amendment regulatory taking claim.

Extraction's Sixth Claim for Relief purports to assert a claim for inverse condemnation seeking compensation from the City.  Close review of the FAC, however, reveals that Extraction basis the claim on its concern that the City will, at some point in the future, shut down its operations.  #29, ¶¶ 110, 112, 142, 151-53, and 192-98.  Yet, Extraction confirms it is presently operating all of its drilled wells.  *Id*. at ¶¶ 142 and 195.  Rather than identify any act that might constitute a taking in the constitutional sense, Extraction surmises that the City's adoption of the Ordinance may require it to operate those wells in a less profitable manner than it would otherwise like.  *Id*. at ¶ 144.  As discussed below, this theory is unripe and, if the Court examines the merits of the Sixth Claim for Relief, does not state an actionable taking under federal law.

### a.  The taking claim is unripe.

Regardless of the basis of Extraction's Sixth Claim for Relief, Extraction's taking theory is unripe.  A regulatory taking claim is not ripe "until the government entity charged with implementing [zoning] regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87(1985) ("*Williamson*").[8] This finality requirement "seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review." *Bateman v. City of West Bountiful*, 89 F.3d 704, 708 (10th

---

[8]  In *Knick v. Twp. of Scott, Pennsylvania,* the Supreme Court overruled the *Williamson* "state-litigation requirement," which required a property owner to bring a claim for just compensation under state law in state court before bringing a taking claim in federal court. However, the remainder of *Williamson* remains good law.  *Id.* (noting that "the validity of [the] finality requirement ... is not at issue").  This District has interpreted *Knick* as not overruling the requirement that a property owner must obtain a final decision before bringing a § 1983 takings claim in federal court.  *N. Mill St., LLC v. City of Aspen*, No. 19-CV-00188-PAB-GPG, 2020 WL 1166855, at *2 (D. Colo. Mar. 10, 2020) (applying *Williamson's* finality requirement).

7

Cir. 1996). "A 'final decision' requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question." *SK Finance SA v. Bd of Cty. Com'rs*, 126 F.3d 1272, 1276 (10th Cir. 1997).

The Ordinance permits Extraction to seek a variance. *See* #29-5, pp 4-5.  Just prior to its convictions on the BMC 9-36-080 Citations Extraction applied for a variance under the Ordinance. Its application lacked sufficient information to support its request, so the City asked Extraction to supply it with additional documentation. *See* Exh. D, p 3. Unless and until the City actually denies Extraction's variance application, the City has yet to reach a final decision that would make this takings theory ripe for adjudication. Several Tenth Circuit decisions are instructive.

In *Bateman,* the Tenth Circuit affirmed the dismissal of the plaintiff's Takings Clause claim for ripeness on the basis that the plaintiff "fail[ed] to seek review of the City's action under the procedures authorized by state law." 89 F.3d at 706. Specifically, the plaintiff could have sought a variance to bring his property into compliance with a city building ordinance but chose instead to file a lawsuit. *Id*. at 705-06. Although the city determined the plaintiff's current use did not comply with the city's noise ordinance, that determination was not "conclusive" because the plaintiff could still "obtain[] a variance from the board of adjustment." *Id*. at 708 (citing *Williamson*, 473 U.S. at 194). Because there was not "a conclusive determination of the property's status," plaintiff failed to show that a final decision was reached. *Id*. at 707.

Similarly, in *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989) ("*Landmark Land*"), the Tenth Circuit concluded the plaintiff's takings claim was  unripe because the city had "neither indicated definitively what level of development will be allowed on [plaintiff's] property, nor finally and officially ruled out the possibility that [the plaintiff] will be

able to proceed with its original plans." *Id*. at 721.  The Tenth Circuit noted that the claim would not be ripe until the plaintiff was "in a position to allege not only that its initial permit applications were denied, but also that it has made some effort to pursue compromise … that would allow some level of development." *Id*.

Here, like in *Bateman* and *Landmark Land*, Extraction fails to establish the City has reached a final decision such that its takings theory is ripe. The City noted in the MTD that Extraction submitted a variance application and that it was under review by the City such that there has been no "conclusive determination of the property's status." #19, pp 10. Since then, the City has requested that Extraction supplement its application, Extraction has submitted materials in response, and the City is in the process of reviewing this supplemental documentation. *See* Exh. D; Exh. E. The City still has not issued any final decision on Extraction's variance request, and thus, the issues and factual components of the dispute over the future impact of the Ordinance on Extraction's other sites are not "sufficiently fleshed out to permit meaningful judicial review" which is the singular purpose of the finality requirement. *Bateman*, 89 F.3d at 707. Until the City issues a final decision on Extraction's variance request, this taking claim will remain unripe and must be dismissed under Rule 12(b)(1).

### b.     Extraction has not stated a cognizable taking theory.

Beyond ripeness concerns, Extraction has not stated a Fifth Amendment taking occurred. The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without paying for it. U.S. Const. amend. V; *see Knick*, 139 S. Ct. at 2167. A taking claim is evaluated in two parts. First, Extraction must state a cognizable property interest that is the subject of the taking.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000 (1984).  For purposes of this motion, the City does not challenge that Extraction meets this threshold

requirement having alleged that it owns the mineral rights to the various sites, including the site that is the subject of the noise ordinance violations.[9] *See* #29, ¶ 15.

The City contests Extraction's ability to demonstrate that a taking occurred in the constitutional sense. Extraction must show that the deprivation or reduction of that interest constitutes a "taking." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). The Takings Clause does not require compensation unless private property has been taken for "public use." U.S. Const. amend. V. It is well-established that there is no taking for "public use" where the government acts pursuant to its police power. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491–92 (1987) ("[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (internal citations omitted); *Goldblatt v. Town of Hempstead, N. Y.*, 369 U.S. 590, 592 (1962) ("If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."); *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019), *cert. denied*, No. 19-1123, 2020 WL 3492667 (U.S. June 29, 2020) (unpublished) (when the state acts to preserve the "safety of the public," the state "is not, and, consistent[ ] with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate [affected property owners] for pecuniary losses they may sustain" in the process) (quoting *Mugler v. Kansas*, 123 U.S. 623, 669 (1887)).

Extraction alleges the City's use of its police powers to enact is an impermissible "substantial step" toward shutting down its operations, an end result that would constitute a

---

[9] It is an unsettled question whether a mineral interest, alone, is a sufficient property interest. *See Animas Valley Sand & Gravel, Inc. v. Bd. of Cty. Comm'rs of Cty. of La Plata*, 38 P.3d 59, 68 (Colo. 2001).

regulatory taking. *See* #29, ¶¶ 193-98. The Fifth Amendment, however, does even not contemplate claims for anticipatory takings. *See Ogden River Water Users' Ass'n v. Weber Basin W. Cons.*, 238 F.2d 936, 942 (10th Cir. 1956) (the "Fifth Amendment [does not] entitle one to anticipatory compensation.") ("*Ogden*"). This alone is fatal to Extraction's Sixth Claim for Relief.

Moreover, the City's adoption of the Ordinance was a valid exercise of its police power and, therefore, is not a taking. Through the Ordinance, the City requires all businesses engaged in "any industrial use," between 10:00 p.m. and 7:00 a.m., that is unenclosed, and located outside of industrial zoned districts to "show that the noise from the operations will not exceed 40 dB(A) or 65 dB(C)" under certain parameters. #29-8, p 4. Colorado courts recognize that municipalities have broad police powers, including the power to establish laws that promote the health, safety, and welfare of citizens. *Town of Dillon v. Yacht Club Condominiums Home Owners Ass'n*, 325 P.3d 1032, 1038 (Colo. 2014). Colorado law authorizes local governments to effect reasonable regulations of oil and gas operations in order to "to protect and minimize adverse impacts to public health, safety, and welfare and the environment." C.R.S. § 29-20-104(1)(h).

Here, the City enacted the Ordinance pursuant to C.R.S. § 29-20-104(1)(h). #29-8, p 1. In doing so, the City found that residents were being disturbed in their sleep by noise from Extraction's oil and gas operations and complained of resulting adverse health impacts. *Id*. The City further found that noise can "cause or exacerbate" significant health concerns. *Id*. Thus, the public's health and safety were the City's primary concern for exercising its lawful authority to regulate.

Extraction also fails to plead facts that plausibly suggest the Ordinance, facially or as applied, strips it of all "economically productive or beneficial uses" of its sites. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992). The Supreme Court expressly cabined this

categorical rule to "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002) (emphasis in original).

The FAC is silent as to the present impact of the Ordinance on Extraction's existing operations, except that it had to pay a small fine. *See* #29, ¶ 138. Instead, Extraction speculates that its future operations will be negatively impacted by the Ordinance, alleging that it would have to shut down for "nine hours every night" and that the time spent ramping up and down operations render the sites not "economically viable" and presents "more opportunity for things to go wrong." #29, ¶ 144. As mentioned previously, the Fifth Amendment does not contemplate a claim that anticipates speculative, future impact. *Ogden*, 238 F.2d at 942. Moreover, loss of profits, alone, is "a slender reed upon which to rest a takings claim." *Andrus v. Allard*, 444 U.S. 51, 66 (1979). And the destruction of "one 'strand' of the bundle [of property rights] is not a taking." *Id*. at 66.

Though the Ordinance's requirements may delay future phases of new drilling operations, a point which remains an open question given that Extraction has not offered the City any evidence to support this contention yet, Extraction concedes that it is now "quietly" producing oil and gas at two of its six sites. #29, ¶ 142. It is illogical, then, to deduce from Extraction's sparse factual allegations that it has been deprived of all economically beneficial or productive use of the property or that its property has been rendered effectively worthless as a result of the Ordinance. Extraction offers no facts to explain why this deprives it of all benefit it derives from these sites. Moreover, Extraction's unsupported contention that the City is attempting to "shut down" its operations, #29, ¶ 195, is the type of speculative and conclusory allegation that this Court must disregard. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

level[.]") (internal quotations omitted).[10]  Extraction has not adequately stated a claim that a taking occurred as a result of being cited for violating the Ordinance and the Court must dismiss Extraction's Fifth Amendment claim.

> **2.     Extraction has not stated viable § 1983 claims.**

>> **a.     Contracts Clause claim.**

Extraction claims the City's enforcement of the Ordinance violates the Contracts Clause. #29, ¶ 187.  Before the Court reaches the merits of the claim, it must first find that § 1983 is the proper vehicle for asserting such a claim.  In *Carter v. Greenhow*, the Supreme Court dealt with an alleged Contracts Clause violation brought under § 1983's predecessor statute, Revised Statute 1979. 114 U.S. 317 (1885). The central question there was whether a violation of the Contracts Clause subjected the plaintiff "to the deprivation of a right, privilege, or immunity secured by the [C]onstitution" such that it gave rise to a private right of action under Revised Statute 1979.  *Id.* at 321.  The Court noted that the Contracts Clause, "so far as it can be said to confer upon or secure to any person any individual rights, does so *only indirectly and incidentally.*"  *Id.* at 322.  (emphasis added).  The remedy is not a private cause of action against the state official responsible for the contractual impairment, but rather "a right to have a judicial determination declaring the nullity of the attempt to impair its obligation" in a suit "to vindicate his rights under a contract."  *Id*.  Thus, an alleged Contracts Clause violation "does not show a cause of action" within the terms of Revised Statute 1979.  While utilizing § 1983 to assert a Contracts Clause claim remains an open question in the Tenth Circuit, the Fourth and Sixth Circuits have reaffirmed *Carter*'s holding and concluded that it precludes a plaintiff from raising a cognizable § 1983 claim based upon a Contracts Clause violation.  *See Kaminski v. Coulter*, 865 F.3d 339, 346 (6th Cir. 2017); *Crosby*

---

[10] Extraction recognizes the speculative nature of this allegation by prefacing it with"[w]hile Broomfield has not yet gone so far as to shut down Extraction …."  #29, ¶ 195.

*v. City of Gastonia*, 635 F.3d 634, 641 (4th Cir. 2011).  This same logic applies here to vitiate Extraction's Contracts Clause theory.

If the Court examines the merits of this theory of relief, Extraction's Contracts Clause claim still fails.  Under the Contracts Clause, "[n]o State shall...pass any...Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Nonetheless, not all laws affecting pre-existing contracts violate the Contracts Clause. *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018).  Courts apply a two-part test to determine whether a law crosses this constitutional line.  The threshold inquiry is whether the law has "operated as a substantial impairment of a contractual relationship." *Id.* (citation omitted). In answering that question, "the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id*. (citations omitted). If a substantial impairment exists, the inquiry turns to the "means and ends of the legislation." *Id*.  In particular, the Court has asked whether the state law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose." *Id*. (quotation omitted).  More simply put, the Contracts Clause does not "obliterate" the police power.  *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978).

With this framework in mind, Extraction cannot make the requisite threshold showing because the City's enactment and application of  new laws was contemplated in the relevant contract. The Amended and Restated Oil and Gas Operator Agreement ("Operator Agreement") provided that Extraction could be subject to "regulations that are general in nature and that are appliable to all commercial and industrial operations in the City" even though such regulations might be more stringent than those regulations that applied at the time of the agreement. #29-2, p 10, ¶ 15. In negotiating the Operator Agreement, Extraction conceded the City's ability to regulate

its conduct in the future. Although Extraction may have agreed to terms of the Operator Agreement that it now regrets, it cannot circumvent those terms now by claiming a substantial impairment exists.

Nor can Extraction's claim survive even if the Court looks to the appropriateness, reasonableness, or public purpose of the Ordinance. The Ordinance is a lawful exercise of the City's police powers, *see, supra*, § III(C)(1)(a), and, therefore, Extraction cannot maintain its Contracts Clause claim here.

### b.   Ex Post Facto Clause claim.

Extraction's theory that Article 1, § 10 of the U.S. Constitution's ex post facto prohibition makes its prosecution by the City impermissible also fails as a matter of law.  #1, ¶ 1189. The Ex Post Facto Clause precludes enactment of a law that "imposes a punishment for an act [that] was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quotations omitted).

Here, the City enacted the Ordinance on January 14, 2020.  #29-5, p 8.  All of the citations the City issued Extraction are for noise ordinance violations that occurred in February and March 2020, all of which post-date the Ordinance's enactment.  *See* Exh. F.[11]  Thus, Extraction has not pled facts implicating the Ex Post Facto Clause.

---

[11]  Extraction references its citations for violations of the Ordinance throughout the FAC.  *See, e.g.*, #29, ¶¶ 87, 88, and 116.  These citations are "central" to Extraction's claims and, therefore, this Court may consider them without converting this motion to a motion for summary judgment under Rule 56.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

c.      **Fourteenth Amendment class-of-one claim.**

i.      **Extraction cannot maintain an as-applied class-of-one claim.**

Extraction appears to base its equal protection class-of-one claim, in-part, on the contention that it has been impermissibly prosecuted for noise ordinance violations.  #29, ¶¶ 96 and 107.  The Supreme Court, in *Enquist v. Oregon v. Department of Agriculture*, 553 U.S. 591 (2008), rejected the application of class-of-one equal protection to state actions that involve this type of discretionary decision-making.   *Enquist* pointed to police officers issuing traffic citations for speeding to illustrate the point.  A police officer who tickets one driver for speeding and not others, based on nothing more than speed, makes a "subjective, individualized" decision.  The driver's complaining about being singled out for no reason other than speeding, as opposed to being ticketed because of the driver's race or sex, is nothing more than a challenge to the legitimacy of the underlying action, not "the fear of improper government classification."  *Id*. at 604.  Under such circumstances, where discretion is inherent in the challenged action, it is improper to contend that the "subjective, individualized decision … was subjective and individualized" such that a class-of-one claim cannot lie.  *Id*. at 604-05.

Here, the Ordinance imposes noise limits and study requirements on specific businesses just as a speed limit restricts drivers.  The City cited Extraction for noise ordinance violations because the subject "industrial use"[12] did not meet the Ordinance's noise level requirements and Extraction refused to submit a noise study.  *See* #29, ¶ 115.  Extraction's contention that it was "singled out" for prosecution under the Ordinance, like the example offered by the *Enquist* Court,

---

[12] An "industrial use," under the Ordinance, must be permitted as a "use by special review in an I-2 or I-3 zone district," and includes uses such a s "the development or operation of oil wells or gas wells," among others. #29-5, p 3.

is nothing more than a challenge to the legitimacy of the underlying discretionary decision to prosecute and one that does not raise traditional equal protection concerns.

### ii.    Extraction has not stated a facial class-of-one challenge to the Ordinance.

Extraction's facial challenge to the Ordinance on class-of-one grounds does not pass muster under *Twombly* and *Iqbal* either.  *See* #29, ¶ 188.  Extraction must plead that (1) others "'similarly situated in all material respects' were treated differently" and (2) that there is "no objectively reasonable basis for the defendant's action."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) ("*Kansas Penn*").  To guard against "turning even quotidian exercises of government discretion into constitutional causes," *Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1209 (10th Cir. 2006) ("*Jicarilla*"), class-of-one plaintiffs bear a "substantial burden" in satisfying both elements of a class-of-one claim. *Kansas Penn*, 656 F.3d at 1217; *Jicarilla,* 440 F.3d at 1212 ("The requirement that a plaintiff show that similarly situated persons were treated differently 'is especially important in class-of-one cases'"); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004) ("It is … imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class").

The Tenth Circuit emphasizes a strict reading of these elements.  "It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation." *Jennings*, 383 F.3d at 1210-11.  Requiring that a plaintiff identify comparators that are "similarly situated in all material respects" is "inevitably more demanding where a difference in treatment could be legitimately based on a number of different factors." *Kansas Penn*, 656 F.3d at 1218. A broader application "could subject nearly all state

regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Id.* (quotation omitted). In order to "nudge" claims "across the line from conceivable to plausible," *Twombly,* 550 U.S. at 557, a class-of-one plaintiff must allege "*specific examples* of similarly situated individuals and differing treatment." *Kansas Penn*, 656 F.3d at 1219 (citation omitted) (emphasis added).

Extraction has not met the strict class-of-one pleading standards for two reasons.  First, the FAC is devoid of enough well-pled facts to permit the Court to find that Extraction's well sites were similarly situated to the King Soopers supermarket located in the Broomfield Town Center, the JP Morgan Chase Data Center ("Data Center"), the Momentum Recycling center ("Recycling Center"), or the Northwest Parkway.  *See* #29, ¶¶ 97-105.  A proper comparator here is (1) an "industrial use;" (2) located outside of an industrial zone district; (3) that is conducting "operations outside of a fully enclosed structure … between the hours of 10:00 p.m. and 7 a.m.;" (4) that has not submitted a noise study as the Ordinance requires.  # 29-5, p 5.  The deficiency of Extraction's claim is evident at this first step since:

- Apart from the Northwest Parkway, none of these operations, by Extraction's own admission, are classified as "'industrial uses' without roofs,"  #29, ¶ 98;

- Extraction admits that both the King Soopers supermarket and Data Center are exempt from the Ordinance,  *id*. at ¶¶ 102-03;

- Extraction fails to allege the Recycling Center is located in a non-industrial zone (indeed, the Recycling Center is located outside of the corporate limits of the City and County of Broomfield),  *id*. at ¶¶ 104-05;

- Extraction does not allege the Northwest Parkway is an "industrial use" under the Ordinance, nor does the Ordinance even identify highways as an "industrial use"; and

- Finally, he FAC is silent as to whether any of these operations refused to submit a noise study after being requested to do so.

The FAC, thus, includes no non-conclusory allegations of how and when the City treated any similarly situated entity differently.  *See Crider v. Bd. of Cty. Comm'rs of Cty. of Boulder*, 246 F.3d 1285, 1288-89 (10th Cir. 2001) (holding that, while the plaintiffs and its identified comparator both owned eighty acres of adjacent land, the plaintiffs failed "to allege facts sufficient to establish that they are similarly situated" to the comparator).  This alone, is fatal to Extraction's claim.

Second, Extraction fails to allege any well-pled facts to support the notion that the City's alleged disparate treatment was objectively "irrational and abusive," *Jicarilla,* 440 F.3d at 1211, and "wholly unrelated to any legitimate state activity," or objective. *Mimics, Inc. v. Vill. Of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005).  Not only is the Ordinance entitled to a presumption of validity, given that it resulted from the City's exercise of its police power, s*ee Barnes v. Glen Theatre,* 501 U.S. 560, 569 (1991), but the City proffered a legitimate government interest which is rationally related to the disparate treatment in the Ordinance itself: citizens in residential zone districts have experienced sleep disturbances by noise from oil and gas operations, such noise can cause and/or exacerbate a variety of health conditions, and the City had the ability to regulate such noise pursuant to C.R.S. § 29-20-104(1)(h), *see* 29-5, p 1.  This public health concern is an objectively reasonable basis for the City's actions.  *See, e.g., Heartland Biogas, LLC v. Bd. of Cty. Commissioners of Weld Cty.*, No. 16-CV-03183-RM-NYW, 2017 WL 3730997, at *17 (D. Colo. Aug. 30, 2017) (dismissing class-of-one claim because the "Board's conduct bore a conceivable rational relationship to its interest in ensuring compliance with state environmental laws and protecting public health.") (not reported); *see also Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 439 (W.D.N.Y. 2009), *aff'd,* 392 F. App'x 887 (2d Cir. 2010) (rejecting equal protection-based challenge to ban private aircraft due to noise complaints).  As a result, Extraction has not stated a class-of-one claim.

**D.**     **The Court should not exercise supplemental jurisdiction over state law claims.**

Finally, the Court should not exercise supplemental jurisdiction over Extraction's remaining state law claims.  Extraction acknowledges this Court's jurisdiction over its state law claims is governed by 28 U.S.C. § 1367, which permits a federal district court to exercise its discretion and decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction…."  Federal district courts should "decline to exercise pendent jurisdiction … absent compelling reasons to the contrary" if "federal claims are dismissed before trial, leaving only issues of state law."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted).  Given the various impediments to the Court's exercising jurisdiction over the federal claims in this case, Extraction's state law claim should be dismissed as well.

WHEREFORE, the City respectfully requests this Court dismiss (or stay) Extraction's federal claims, decline to exercise supplemental jurisdiction over its state law claims, and grant any other appropriate relief.

Respectfully submitted this 30th day of November, 2020.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*
_____

Josh A. Marks
Heidi C. Potter
David J. Goldfarb
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com
          hcp@bhgrlaw.com
          djg@bhgrlaw.com
*Attorneys for Defendant*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of November, 2020, I electronically filed the foregoing **RENEWED MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6)** with the Clerk of the Court using the CM/ECF system, which will send notification to such filing to the following e-mail addresses:

Ghislaine G. Torres Bruner
Colin C. Deihl
Bennett L. Cohen
Isuri Lawson
Polsinelli PC
1401 Lawrence Street
Suite 2300
Denver, CO  80202

*s/ Cheryl Stasiak*

Cheryl Stasiak

21